BATROLOMEO CORCIONE *et al. vs.* PELLEGRINO CARRERA.

APRIL 24, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

436

CAPOTOSTO, J. In this action of trespass and ejectment for possession of a cottage numbered 29½ on Ringgold street in the city of Providence, which is in the Providence Defense Rental Area, the jury returned a verdict for the plaintiffs. The case is before us on defendant's exceptions to the refusal of the trial justice to direct a verdict in his favor and to the denial by said justice of his motion for a new trial.

No question is raised as to the validity of the act of Congress, commonly known as the Emergency Price Control Act of 1942, nor as to the validity of the regulations adopted thereunder and enforced by the Office of Price Administration, commonly designated as O. P. A. Furthermore, it is undisputed that the plaintiffs secured authorization from the O. P. A. to institute this action and that notice to quit the premises was duly served on the defendant.

The plaintiffs, Bartolomeo Corcione and Maria Corcione, husband and wife, are the owners of a three-tenement house and a cottage on Ringgold street in the city of Providence. The evidence shows that Bartolomeo is seventy-seven years old and Maria is seventy-three, and that both are in poor health, especially Maria who, because of a serious heart condition and other ailments, needs quiet, rest and constant

attention. The two houses are located on the same lot, the tenement house being on the sidewalk line of that street and the cottage, which is the subject of controversy here, being some 90 feet back from the street.

The plaintiffs' immediate family consists of themselves and four daughters. Another daughter, Mary B. Corcione, who is married and is a practicing physician in Providence, very frequently has to stay overnight with her parents in order to minister to her mother's urgent needs. The Corcione family, thus constituted, now occupy the first floor of the tenement house, which tenement consists of only four rooms. The defendant, his wife and three children, the oldest at home being a boy about seventeen years of age, occupy the cottage, which has seven rooms.

Doctor Corcione, who was the attending physician of the plaintiff, Maria Corcione, testified that her mother's health would be further seriously impaired if she continued to live under the almost unbearable condition of overcrowding in the four-room tenement, and that this condition was aggravated by the unrestrained, boisterous and untoward conduct of defendant's children, which greatly disturbed her mother and prevented her from sleeping. One of the main complaints on this latter point was the practicing by defendant's son on a set of orchestra drums, including bass drum and cymbal, which he played both day and night in attempted unison with music from the radio. Almost the entire testimony of defendant's wife, who was the only witness in his behalf, was directed to a categorical denial of any improper conduct by her children and to an explanation of the extent of her son's use of the drums.

The plaintiff, Bartolomeo Corcione, testified that he wanted the cottage for immediate use and occupancy as a dwelling for himself and wife because of the latter's illness. To the question "What is the reason that you want Mr. and Mrs. Carrera to give up the house", his answer, in broken English, was: "Well, I want to live in there, because my wife; make a lot of noise in the cottage, hear a lot of noise,

never sleep all night, not good; they hollering; my wife, I don't know what I am going to do." On this point Dr. Corcione testified that the family would like to have the mother occupy the cottage so that "we would use it as sort of a convalescent home *for her."* (italics ours)

The authorization of O. P. A. for defendant's eviction, upon which the present action is based, was issued under Section 6 (a) (6) of the Housing Regulations, which prohibits the bringing of such an action unless the landlord owned the housing accommodations prior to October 20, 1942, "and seeks in good faith to recover possession of such accommodations for immediate use and occupancy as a dwelling for himself." The plaintiffs owned the premises in dispute here for about thirty years.

The defendant's sole contention in this case is that the plaintiffs do not seek in good faith to recover possession of the cottage for their own immediate use and occupancy. He argues that his motion for a directed verdict should have been granted because the evidence conclusively shows that the plaintiffs are not acting in good faith because (a) they could and should continue to live with their four and frequently five grown-up daughters in the four-room tenement which they now occupy; (b) they have not offered to make that tenement available for occupancy by the defendant; and (c) they intend to use the cottage as a convalescent home instead of a dwelling. Each of these alleged grounds is clearly based on a distortion of the evidence. Doctor Corcione testified that the plaintiffs intended to occupy the cottage themselves and use it as "sort of a convalescent home for her", meaning her mother who, in her debilitated condition, needed rest, quiet and almost constant attention.

The conflicting evidence in this case required the jury to determine whether the plaintiffs, in good faith, brought this action to recover possession of the cottage for immediate use and occupancy as a dwelling for themselves, or whether they were proceeding to circumvent the provisions of the O. P. A. regulation for some ulterior purpose inconsistent

with such regulation. Defendant's exception to the denial of his motion for a directed verdict is overruled.

The same contentions as above set forth are urged by the defendant in arguing that the trial justice erred in denying his motion for a new trial. We find those contentions clearly without merit. The good faith under the above-mentioned regulation required of these plaintiffs, as owners, concerns only their desire to occupy the cottage as a dwelling for immediate use by themselves. Good faith in this respect is the criterion for determining the controlling issue in this case. Whether the plaintiffs sought *in good faith* to recover possession of the cottage for immediate use and occupation, as required by the regulation, was a fact to be considered in connection with all the other evidence in the case. See *Bumgarner* v. *Orton,* 63 Cal. App. 2d 841; *Beaufort* v. *Ruben,* 33 S. E. 2d 891 (S. C.); *Rexine* v. *Morehouse,* 1 Price Control Cases, par. 51, 869. The jury decided this fundamental issue in favor of the plaintiffs. The trial justice, after an independent review of the evidence, which he is bound to make under our well-known rule governing the consideration of a motion for a new trial, has clearly and, in our opinion properly, approved the verdict. The defendant's exception to the refusal of the trial justice to grant a new trial is therefore overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for the entry of judgment on the verdict.

*Harlow & Boudreau,* for plaintiffs.
*Francis A. Manzi,* for defendant.